## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | | |
|---|---|---|---|
| **BETHANY CHIILDERS** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | **Case No:** | 2:24-cv-00148 |
| | ) | | |
| **v.** | ) | | |
| | ) | | |
| **FAMILY DOLLAR, LLC;** | ) | | |
| **WALGREENS CO.;** | ) | **JURY TRIAL DEMANDED** | |
| **DOLGENCORP, INC., and** | ) | **CLASS ACTION COMPLAINT** | |
| **WALMART, INC.** | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

## COMPLAINT

Plaintiff Bethany Childers ("Plaintiff"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendants FAMILY DOLLAR, LLC ("Family Dollar"), WALGREENS, CO. ("Walgreens"), DOLGENCORP, INC. ("DG") and WALMART, INC., ("Walmart") (collectively "Defendants"), based upon personal knowledge as to her own actions and based upon the investigation of counsel with respect to all other matters, allege as follows:

## INTRODUCTION

1.      Plaintiff brings this class action for damages as a result of Defendants' wrongful conduct in connection with the marketing, sale, and distribution of certain of their allergy, cold and flu products that contain the ingredient phenylephrine, which they claim is an active decongestant. (All products containing phenylephrine are described as "Phenylephrine Products" herein).

2.      The U.S. Food and Drug Administration ("FDA"), has concluded by unanimous finding (16-0), however, that the phenylephrine, which Defendants claimed was an effective

decongestant in their oral allergy, cold, and flu products, is, in fact, wholly ineffective as a decongestant when taken orally.[1]

3.     The drug phenylephrine is in at least 250 allergy, cold, and flu products, including Defendants' products like Family Wellness Daytime Cold & Flu relief, Walgreens Immediate Release Sinus Congestion Mucus Relief PE, Walgreens Severe Cold and Flu, DG Health Allergy Plus Sinus Headache, and Equate Severe Sinus Congestion & Pain.[2]

4.     Despite knowing that oral use of phenylephrine is ineffective, Defendants have manufactured, promoted, marketed, sold, and distributed oral products containing phenylephrine, which hundreds of millions of Americans have purchased to treat certain symptoms, which Defendants knew phenylephrine was ineffective to treat.

5.     Defendants knew or should have known that the representations they made to consumers about the effectiveness of oral phenylephrine were false and misleading.

6.     Defendants' deceptive practices, which were fraudulent, unlawful, against public policy, unscrupulous, and unfair to consumers like Plaintiff and members of the Class and Subclass in this action.

7.     As a result of Defendants' actions, Plaintiff and members of the Class and Subclass suffered substantial damages including out-of-pocket losses and seek to recover all available monetary and equitable relief.

---

[1] https://www.bu.edu/articles/2023/phenylephrine-cold-medicine-decongestant-ineffective/ , law accessed 1/2/2024.

[2] https://www.bu.edu/articles/2023/phenylephrine-cold-medicine-decongestant-ineffective/ , law accessed 1/2/2024.

**PLAINTIFF**

8.      At all relevant times, Plaintiff Bethany Childers was and has been a resident and citizen of the State of West Virginia, residing within Kanawha County, West Virginia.

9.      Plaintiff Childers, after viewing the package and after exposure to Defendants' false and fraudulent marketing, purchased the Phenylephrine Products Family Wellness Daytime Cold & Flu relief, Walgreens Immediate Release Sinus Congestion Mucus Relief PE, Walgreens Severe Cold and Flu, DG Health Allergy Plus Sinus Headache, and Equate Severe Sinus Congestion & Pain for the purpose of treating her cold and flu symptoms.

**DEFENDANTS**

10. Defendant Family Dollar, LLC is a North Carolina limited liability company with its headquarters and principal place of business in the State of North Carolina.

11. At all relevant times to this Complaint, Defendant Family Dollar, LLC was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain oral Phenylephrine Products, including but not limited to Family Wellness Daytime Cold & Flu relief.

12.  This marketing, promoting, selling, and/or distribution purposefully included the State of West Virginia.

13. Defendant Walgreens Co. is an Illinois corporation with its headquarters and principal place of business in the State of Illinois.

14. At all relevant times to this Complaint, Defendant Walgreens Co. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain oral Phenylephrine Products, including but not limited to Walgreens Severe Cold & Flu and Walgreens Immediate Release Sinus Congestion.

15. This marketing, promoting, selling, and/or distribution purposefully included the State of West Virginia.

16. Defendant DolgenCorp, LLC is a Tennessee corporation with its headquarters and principal place of business in the State of Tennessee.

17. At all relevant times to this Complaint, Defendant DolgenCorp, LLC was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain oral Phenylephrine Products, including but not limited to DG Health Allergy Plus Sinus Headache.

18. This marketing, promoting, selling, and/or distribution purposefully included the State of West Virginia.

19. Defendant Walmart Inc. is a Delaware corporation with its headquarters and principal place of business in the State of Arkansas.

20. At all relevant times to this Complaint, Defendant Walmart Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain oral Phenylephrine Products, including but not limited to Equate Severe Sinus Congestion & Pain.

21. This marketing, promoting, selling, and/or distribution purposefully included the State of West Virginia.

## JURISDICTION AND VENUE

22. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

23. The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the class are citizens of a state different from Defendants.

24. This Court has personal jurisdiction over Defendants.

25. Defendants are authorized to conduct and do conduct business in West Virginia; have engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the Phenylephrine Products to Plaintiff in West Virginia; and, have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within the State which allows this Court to exercise jurisdiction.

26. Pursuant to 28 U.S.C §§ 1391 (a) and (b), since a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred while she resided in this jurisdiction, venue is proper in this Court.

27. Additionally, Defendants conducted substantial business in this jurisdiction, which satisfies 28 U.S.C § 1965(a).

## FACTS

28. Phenylephrine is a drug that constricts blood vessels, working to temporarily relieve congestion.[3]

29. Generally, phenylephrine is offered as spray or pill form that is taken orally.

30. The claims and issues in this case relate specifically to oral Phenylephrine.

31. In September 2023, the FDA voted 16-0 finding that scientific data does not support that "the recommended dosage of orally administered phenylephrine is effective as a nasal decongestant."[4]

---

[3]    https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=c40df8f6-8374-4f9b-bfce-94d582470d48&type=display, Phenylephrine-Phenylephrine tablet, Rebel Distributors Corp., last accessed 1/5/2024.

[4]    https://www.fda.gov/drugs/drug-safety-and-availability/fda-clarifies-results-recent-advisory-committee-meeting-oral-phenylephrine, FDA Clarifies results of recent advisory committee meeting on oral phenylephrine, last accessed 1/5/2024.

32. The FDA Advisory panel recommended that Phenylephrine drugs should not be sold due to the lack of efficacy.[5]

33. The labeling of these over-the-counter medications is the simplest form of marketing for Defendants, which in this case include claims by the Defendants that the products containing Phenylephrine are effective at treating congestion.

34. These statements were misrepresentations, misleading, and/or fraudulent.

35. For example, Defendant Family Dollar, LLC claims that its Family Wellness Daytime Cold & Flu relief product contains, *inter alia*, a "nasal decongestant:"



36. For example, Defendant Walgreens, Co. claims that its Walgreens Immediate Release Sinus Congestion Mucus Relief PE product is used to treat, *inter alia*, "nasal & sinus congestion:"

---

[5] https://www.fda.gov/media/171915/download, NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph.



37. For example, Defendant Walgreens, Co. claims that its Walgreens Severe Cold and Flu product is used to treat, *inter alia*, "nasal/sinus congestion:"



38. For example, Defendant DolgenCorp, LLC claims that its DG Health Allergy Plus Sinus Headache product contains, *inter alia*, a "nasal decongestant:"



39. For example, Defendant Walmart, Inc. claims that its Equate Severe Sinus Congestion & Pain product is used to treat, *inter alia*, "nasal congestion:"



40. Defendants each warranted, marketed, and promoted to the general public that their respective products containing phenylephrine were effective for treating nasal congestion, all while each Defendant knew or should have know that the drug was completely ineffective for treating nasal congestion.

41. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding products containing phenylephrine and true characteristics of those products were material to the decisions of Plaintiff and Class Members to purchase those products, as Defendants intended. Plaintiff and Class Members were exposed to those misrepresentations, concealments,

omissions, and suppressions of material facts, that Defendants' products containing phenylephrine were effective, in deciding to purchase Defendants' products.

42. Plaintiff and Class Members reasonably accepted the Defendants' statements and marketing as true, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

43. Had they known the truth about Defendants' products containing phenylephrine, Plaintiff and Class Members would not have purchased Defendants' products containing phenylephrine or would have paid significantly less for them.

44. As a direct and proximate result of Defendants' deceptive practices, Plaintiff and Class Members have sustained economic injury and loss—either by purchasing a product they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above.

## CLASS ACTION ALLEGATIONS

45. In accordance with the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because (1) at least one member of the proposed class is a citizen of a state different than that of each Defendant, (2) the amount in controversy exceeds $5,000,000 exclusive of costs and interest, (3) the proposed class is larger than 100 class members, and lastly, (4) no exceptions apply.

46. Plaintiff brings this class action on her own behalf and on behalf of all other consumers similarly situated in the United States as members of the proposed Nationwide class, and on behalf of all West Virginia consumers similarly situated in the West Virginia Subclass, in accordance

with Federal Rules of Civil Procedure 23(a), 23(b)(2-3), and c(4) ("FRCP"). The proposed Class

ad Subclass are defined as follows:

    a. **<u>Nationwide Class</u>**: During the fullest period allowed by law, all persons within the United States who have purchased, at any time, and at any location, any Phenylephrine Products manufactured by the Defendants ("the Class").

    b. **<u>West Virginia Subclass:</u>** During the fullest period allowed by law, all persons within the State of West Virginia who have purchased, at any time, and at any location, any Phenylephrine Products manufactured by the Defendants ("the West Virginia Subclass").

    c. Nationwide Class and West Virginia Subclass members are collectively referred to as "Class Members."

    d. Like the Plaintiff, each Class Member purchased phenylephrine products labeled, marketed, and otherwise containing the Defendants' fraudulent misrepresentations claiming that the ineffective ingredient would serve as a decongestant.

    e. The Class Members' understanding was both reasonable and a material basis for their decisions to purchase the Defendants' products containing phenylephrine.

    f. Defendants marketed the products as effective in treating congestion through marketing activities which led to the sale of the products containing phenylephrine.

47. Excluded from the Class and Subclass are assigned judges and members of their families within the first degree of consanguinity, and Defendants and their subsidiaries, affiliates, officers, directors, employees, successors, or assigns, and judicial officers, and their immediate family members.

48. The Class and Subclass satisfy the requirements of FED. R. CIV. P. 23.

49. **Numerosity.** The members of the Class are so numerous and geographically dispersed that individual joinder of all class members would be impracticable.  The exact number of Class members as of the date of filing is currently unknown to Plaintiff but may be readily identified and

ascertained from the books and records maintained by Defendants. Individual joinder of the members of the proposed Class and Subclass are impracticable because the members of the Class and Subclass are in the tens or hundreds of thousands.

50. To a reasonable degree of certainty, the Defendants have objective evidence as to the identity of each Proposed Class Member, the damages suffered by each Class Member, including but not limited to receipts, reward account data, names, phone numbers, credit card data, customer service complaints, and other information that objectively identifies class members.

51. The use of mail, publication and through records of Defendants and third-party retailers would allow for notification to Class Members regarding the pendency of this action.

52. **Commonality and Predominance.** This Complaint includes common questions of law and fact that affect Plaintiff and Class Members. Resolution of these questions will not require individual inquiry into the actions or circumstances of individual Class Members and can be answered with evidence common to all members of the Class and Subclass. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members and which can be answered using evidence common to the Class. These common issues of law and fact include, but are not limited to:

    g. Whether the Defendants' marketing efforts surrounding the Phenylephrine Products were done in a manner that was false or misleading;

    h. Whether, based on the conduct in this complaint, Defendants engaged and continue to engage in misleading, unfair, fraudulent, and/or unlawful business actions;

    i. Whether the conduct, of Defendants was committed knowingly and/or intentionally;

    j. Whether Defendants' conduct constitutes violations of the laws asserted in this complaint;

    k. Whether Class Members were harmed by Defendants' unfair, false, fraudulent, and/or misleading statements;

l.   Whether Defendants had a duty to correct the unfair, false, fraudulent, and/or misleading statements;

m.  Whether Class Members were harmed by Defendants' unfair, fraudulent, false, and/or misleading statements;

n.   Whether Defendants were unjustly enriched by their conduct;

o.   Whether the Class Members or Subclass Members are entitled to punitive damages;

p.   Whether the Class can recover attorney's fees;

q.   Whether, as a result of the misconduct alleged, Plaintiff, Class Members, and Subclass Members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief;

53. **Typicality.** Plaintiff's claims are typical of the claims of the proposed Class and Subclass because Plaintiff and Class Members were harmed in the same manner by the same conduct. Plaintiff and the other Class members suffered damages as a direct and proximate result of these same wrongful practices by Defendants.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class Members' claims.

54. Plaintiff and Class Members have all sustained economic injury arising from the Defendants' violations of common and statutory law as alleged in this complaint.

55. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass.

56. Plaintiff's interests do not conflict with the interests of the Class and Subclass that they seek to represent. Plaintiff will fairly and adequately protect the interests of the absent members of the Class. Because their claims are typical of those of absent members of the Class, Plaintiff has every incentive to vigorously pursue those claims on behalf of absent Class members, and their interests coincide with, and are not antagonistic to, those of the Class. Rather, Plaintiff shares the same interest as Class members in putting an end to Defendants' conduct.

57. Plaintiff has retained competent counsel who are experienced in prosecuting class actions, and Plaintiff intends to prosecute this action actively.

58. The requirements of FED. R. CIV. P. 23(b)(1), (b)(2), (b)(3), and (c)(4) are satisfied in that, as set forth above, prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants. Adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests. All Class members would benefit from the relief requested herein.

59. **Superiority.** The class mechanism is the superior method to all other available methods for the fair and efficient adjudication of these claims for the Plaintiff, Class Members, and Subclass Members.

60. As the individual damages in this case are likely to be relatively small, individual litigation is not practicable.

61. Additionally, it is unlikely that Individual Class Members will want to undertake the burden and expenses of an individual case.

62. Further, utilization of individualized litigation would increase the delay and expense to the parties, and would exasperate the burden on the judicial system, and could also lead to inconsistent or contradictory judgments.

63. The class action device would allow for fewer management difficulties, would allow for singular adjudication, economy of scales, and comprehensive supervision by a single court.

64. Questions of law and fact common to all Class Members predominate over any questions that would affect only individual Class Members or Subclass Members.

65. In each instance, the injuries sustained by Plaintiff and Class members flow from a common nucleus of the operative facts.

## TOLLING OF THE STATUTE OF LIMITATIONS

a)    **Discovery Rule Tolling**

66. As a result of the acts and omissions by the Defendants, Plaintiff and members of the Class and Subclass, through the exercise of reasonable due diligence, could not have and did not discover that Phenylephrine was ineffective for treating nasal congestion, as has been determined by the FDA.

67. For that reason, the statute of limitations periods did not begin to accrue until Plaintiff discovered or should have discovered, according to the exercise of reasonable diligence, Defendants' wrongful acts and/or omissions.

b)    **Fraudulent Concealment Tolling**

68. All applicable statutes have been tolled, additionally, because of the knowing and active fraudulent concealment and misrepresentations by Defendants about whether Phenylephrine was effective during the relevant time period.

69. Defendants have a continuing duty to disclose the character, efficacy, quality, safety, and safety concerns of Phenylephrine and the products containing Phenylephrine to its users, including Plaintiff and members of the Class and Subclass.

70. Even to this date, Defendants have failed to inform consumers adequately and fully about the matters addressed above.

71. Plaintiff—and millions of similarly situated West Virginians and Americans—viewed Defendants' affirmative misrepresentation when choosing a product to resolve their nasal congestion.

72. Because Defendants actively concealed the inefficacy of Phenylephrine and products they manufacture, market, promote, sell, and/or distribute containing Phenylephrine, they are estopped from any statute of limitations defense.

## CAUSES OF ACTION

### COUNT I

### FRAUDULENT MISREPRESENTATION

73. Plaintiff alleges and reincorporates the allegations in paragraphs 1-72 above as if fully set forth below.

74. Plaintiff brings this claim both individually and on behalf of the Class and Subclass.

75. At all relevant times, Defendants were obligated, and duty bound to truthfully represent the facts surrounding the lack of efficacy of the Phenylephrine and products containing Phenylephrine to Plaintiff and the Class and Subclass.

76. Instead, Defendants falsely advertised that the products were effective, despite each Defendant knowing, or having reason to know, that the products were not effective for treating nasal congestion as they aggressively claimed in their marketing of these products.

77. Defendants willfully deceived the Plaintiff and millions of Class and Subclass Members regarding the effectiveness of Phenylephrine and products containing Phenylephrine.

78. Plaintiff's beliefs that Phenylephrine and products containing Phenylephrine were objectively reasonable.

79. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class and Subclass suffered financial harm in purchasing the products, which the Defendants knew were and are ineffective for treating nasal congestion as advertised.

## COUNT II

## NEGLIGENT MISREPENTATION

80. Plaintiff alleges and reincorporates the allegations in paragraphs 1-72 above as if fully set forth below.

81. Plaintiff brings this claim both individually and on behalf of the Class and Subclass.

82. At all relevant times, Defendants were obligated, and duty bound, to truthfully represent the facts surrounding the lack of efficacy of Phenylephrine and products containing Phenylephrine to Plaintiff and the Class and Subclass.

83. Instead, Defendants falsely advertised that the product was effective, despite each Defendant knowing, or having reason to know, that the products were not effective for treating nasal congestion as they aggressively claimed in their marketing of these products.

84. Defendants, at least negligently, but possibly recklessly, deceived Plaintiff and millions of Americans who are Members of the Class and Subclass by misrepresenting the efficacy of Phenylephrine and products containing Phenylephrine.

85. Plaintiff and the Class and Subclass believe that the Phenylephrine and products containing Phenylephrine were objectively reasonable.

86. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class and Subclass suffered financial harm in purchasing the products, which the Defendants knew were and are ineffective for treating nasal congestion as advertised.

## COUNT III

## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY

87. Plaintiff alleges and reincorporates the allegations in paragraphs 1-72 above as if fully set forth below.

88. Plaintiff brings this claim both individually and on behalf of the Class and Subclass.

89. Each State, the District of Columbia, and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code.

90. Plaintiff, and each Class and Subclass Member, formed a contract with each Defendant when the Plaintiff (and Class/Subclass Members) purchased the products containing Phenylephrine.

91. The terms of the contract included the promises made by each Defendant in its marketing materials (i.e. the product label).

92. Those labels constitute express warranties and were the basis for the bargain, making them part of the standardized contract between the Plaintiff and the members of Class/Subclass and each Defendant.

93. Each Defendant expressly warranted that the products containing Phenylephrine were fit for ordinary use and were effective for the specific stated purpose in treating the indications listed, that the products were merchantable and were not misbranded.

94. Each Defendant knew or should have known that the products sold containing Phenylephrine were being manufactured and sold for the intended purpose of consumption by humans for treating nasal congestion, as advertised on its packaging, and therefore warranted that the products containing Phenylephrine were of merchantable quality and fit for that purpose.

95. Because the products containing Phenylephrine were not of merchantable quality, nor were they fit for the product's ordinary purpose, and certainly not for the stated, specific purpose, and that the product did not conform to generally applicable standards, the Defendants breach its express warranties.

96. Phenylephrine products, sold by each Defendant, did not fulfill their intended purpose.

97. Plaintiff and the Class and Subclass Members bargained for an adequately made and labeled product that performed as warranted, which was not the case with Defendants' Phenylephrine Products.

98. Plaintiff and the Class and Subclass Members were reasonably expected purchasers who would use, consume, and/or be affected by the misbranded, ineffective Products containing Phenylephrine marketed and sold by each Defendant.

99. Plaintiff, nor the Class/Subclass Members, altered the Products containing Phenylephrine.

100.    As a direct and proximate result of Defendants' breach of express and/or implied warranty, Plaintiff, along with the Class and Subclass Members were injured and have suffered damages in the respect that Defendants' Products containing Phenylephrine were inherently flawed, unfit, or unmerchantable as to have diminished the products significantly, leaving little to no intrinsic value remaining.

**COUNT IV**

**WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT**

**W. VA. CODE § 46A-6-101, *et seq.***

101.    Plaintiff alleges and reincorporates the allegations in paragraphs 1-72 above as if fully set forth below.

102.     Plaintiff brings this claim both individually and on behalf of the Class and West Virginia Subclass Members.

103.     The Defendants engaged in a deceptive and/or unfair act or practice in the conduct of their trade or commerce both within the State of West Virginia and nationally.

104.     As described herein, the Defendants deceptively and unfairly marketed their Phenylephrine products as being effective for treating congestion when they were, in fact, ineffective.

105.     The Defendants' business includes manufacturing, marketing, and selling their drug products in commerce.

106.     The Defendants' actions were the legal cause of actual damages sustained by Plaintiff and the Class and West Virginia Subclass.

107.     The false, fraudulent, and misleading marketing by Defendants of their products containing phenylephrine caused the damages sustained by Plaintiff and the Class and West Virginia Subclass Members.

108.     Plaintiff and the Class and West Virginia Subclass Members were acting reasonably under the circumstances.

109.     Neither Plaintiff nor any member of the Class or West Virginia Subclass could or should have been aware of the false, fraudulent, and unfair nature of the Defendants' statements and/or marketing.

110.     The Defendants' actions, as described herein, were and are likely to mislead Plaintiff and the Class and West Virginia Subclass Members to their detriment.

111.     The Defendants are the only entities in a position to market their products and to be aware of the ineffectiveness of their products.

112.    Any statements made by the Defendants regarding their products are likely to be taken as true by consumers.

113.    As a result, statements made by Defendants regarding the use and effectiveness of their products are likely to deceive consumers, including Plaintiff and the Class and West Virginia Subclass Members.

114.    The Defendants' actions are against established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

115.    It is a violation of public policy, unethical, unscrupulous, and substantially injurious to consumers to advertise and market a product to have qualities that it does not have and to otherwise perform the acts as described herein.

116.    The Defendants' actions caused substantial injury to Plaintiff and the Class and West Virginia Subclass Members.

117.    But for the Defendants' actions, as described herein, the Plaintiff and the Class and West Virginia Subclass Members would not have been injured.

118.    The injury to the Plaintiff and the Class and Subclass Members outweighs any benefit to Plaintiff and/or the Class and West Virginia Subclass Members produced by Defendants' unfair acts.

119.    The Plaintiff and the Class and West Virginia Subclass Members could not have avoided the injury.

**WHEREFORE**, Plaintiff prays for judgment as follows:

    a.    Certifying the Class and Subclass as requested above;

    b.    Awarding Plaintiff and the proposed Class and Subclass Members damages;

c.   Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class Members;

d.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices described above, and directing Defendants to identify, under Court supervision, victims of its conducts and compensate them for their losses;

e.   Ordering Defendants to engage in a corrective advertising campaign;

f.   Awarding punitive damages to the fullest extent supported by statute;

g.   Awarding costs and expenses of this litigation to Plaintiff;

h.   Awarding reasonable attorneys' fees and costs to Plaintiff as supported by statute;

i.   Awarding pre-judgment and post-judgment interest to Plaintiff; and,

j.   For such further relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: March 23, 2024                    By:     /s/Charles R. Webb

Charles R. "Rusty" Webb
The Webb Law Centre, PLLC
716 Lee St. E.
Charleston, West Virginia 25301
(304) 344-9322
rusty@rustywebb.com

W. Daniel "Dee" Miles, III, *pro hac forthcoming*
Alison D. Hawthorne, *pro hac forthcoming*
Demet Basar, *pro hac forthcoming*
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
272 Commerce Street
Montgomery, Alabama 36104
(334) 269-2343
Dee.miles@beasleyallen.com

Alison.hawthorne@beasleyallen.com
Demet.basar@Beasleyallen.com

Rebecca D. Gilliland, *pro hac forthcoming*
Jessica M. Haynes, *pro hac forthcoming*
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
301 St. Louis St.
Mobile, Alabama 36602
(251) 308-1515
Rebecca.gilliland@beasleyallen.com
Jessi.haynes@beasleyallen.com

***Counsel for Plaintiff and the Class***